IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,      OPINION AND ORDER

 v.

                    09-cv-528-slc

JP MORGAN CHASE BANK, N.A.,

        Defendant.

---

In this civil action brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2000e(17), plaintiff Equal Employment Opportunity Commission contends that defendant JP Morgan Chase Bank, N.A. (JPMC) discriminated against Lisa McCurty on the basis of her race and pregnancy when it failed to promote her from her position as a teller to a Sales and Service Associate at the company's banking branch in Monona, Wisconsin. JPMC contends that it is entitled to summary judgment on the EEOC's claims because the EEOC has failed to show that McCurty had better qualifications than the white male who was hired for the position.

As explained below, I am denying JPMC's motion because a dispute of fact exists as to *when* JPMC rejected McCurty, and this fact is material: if JPMC rejected McCurty before anyone else applied for the position, then a jury could infer that JPMC's stated reason for the rejection—that another applicant was better qualified—was not the true reason for JPMC's employment decision. The jury then would have to determine whether the EEOC had proved that JPMC's true reason was discriminatory.

Because there is a genuine dispute whether JPMC rejected McCurty before receiving other applications, it becomes pointless at the summary judgment stage for the court to address and

decide the other issues disputed by the parties, including whether the SSA position is a "sales" job, whether McCurty adequately performed an SSA assignment given to her by her supervisor, Evan Wing, and whether certain comments that Wing made could support any reasonable inference of sex discrimination.[1]

From the parties' proposed findings, I find the following facts to be material and undisputed for the purpose of deciding the instant motion:

FACTS

Defendant JP Morgan Chase Bank, N.A. (JPMC) is a financial services firm that operates a banking center in the city of Monona, Wisconsin. On August 13, 2007, JPMC hired Lisa McCurty, who is African American, as a part-time teller at its Monona baking center. At the time of McCurty's hire and throughout her time at the Monona branch, there were three other tellers who worked at the branch: Nancy Franke, Bernadette Hopkins and Keri Maksen. All three were white females. Franke worked 40 hours a week, Hopkins worked 32 hours a week and Maksen, like McCurty, worked 20 hours a week. In addition to tellers, positions in JPMC's Monona Branch included Branch Manager, Assistant Branch Manager, Sales and Service Associate, Personal Banker and a Financial Advisor who traveled between branches.

As a teller, McCurty's primary job was to perform financial transactions accurately and efficiently. However, she and the other tellers at the Monona branch also were encouraged to promote JPMC's financial service products (such as savings accounts, debit card upgrades, direct

---

[1] Because I am denying summary judgment on the basis of the parties' original submissions, the EEOC's motion for leave to file a surreply is denied as unnecessary. For what it's worth, however, I note that the Fillon e-mail referenced in that motion would have been an additional fact supporting an inference that JPMC rejected McCurty before considering other applicants. *See* dkt. 104, exh. 1.

deposits or investment services) by identifying customers who could use the products and then referring these customers to the appropriate bank staff (a personal banker or financial advisor) who could then sell the product. JPMC pays its tellers a financial incentive for every sales referral that results in the sale of a financial services product to a customer, or, in the event of an investment service, that results in an appointment with a personal banker or financial advisor. JPMC does not have a set number of sales referrals that each teller must make, nor does it limit the amount of incentive compensation that a teller may earn.

The job of a Sales and Service Associate (SSA) is to assist JPMC's Personal Bankers with customer sales and service issues, facilitating the sale of JPMC's financial services products by identifying customer needs and referring customers to the Personal Bankers. An SSA is expected to perform some teller duties and transactions, support salespeople in the branch, work with bankers and provide "excellent customer service." The SSA position has a greater emphasis on facilitating sales of financial services products than the Teller position. JPMC pays SSAs incentive compensation based on a percentage of the commissions earned monthly by the Personal Bankers, thereby rewarding their contribution to the sales process.

In August 2008, a SSA position became available at the Monona Branch. The job posting for this SSA position listed the following as qualifications for the job:

> two years of customer service or sale experience (required);
> related work experience in retail or financial services (preferred);
> comfort in meeting and talking with people, including calling prospects and customers;
> a demonstrated ability to handle multiple tasks and prioritize appropriately, with attention to detail; and
> a demonstrated ability to work in a team environment and give direction to less experienced team members.

3

McCurty applied for the job but was not selected for an interview. The job was awarded to an external applicant, Mary Norton, who was the only applicant that JPMC interviewed for the position. Norton, however, failed to complete her training successfully and the SSA position was re-posted on JPMC's internal website on October 20, 2008.

On October 26, 2008, McCurty applied on line for the again-available SSA position. Her application was reviewed by Raul "Tres" Garza, a recruiter for JPMC who was responsible for reviewing applications and forwarding candidate information for consideration by the branch. Garza forwarded McCurty's application to the branch manager, Evan Wing, on October 28, 2008. Wing had full hiring authority with respect to the October 2008 SSA opening. Although Wing only recently had become the branch manager (on October 16), he was familiar with McCurty from having spent time in the branch during his training period from July to October 2008. McCurty was pregnant at the time she applied for the job, a fact known to Wing.

McCurty was the only internal JPMC applicant. Wing interviewed McCurty on October 31, 2008, before JPMC had solicited external candidates for the SSA position. Wing reviewed McCurty's teller sales referrals and saw that she had only 3 referrals in August 2008, 9 referrals in September 2008 and 8 referrals in October 2008. In Wing's view, these were low numbers: Wing expected his tellers to obtain 20 to 30 referrals per month. McCurty's monthly numbers were substantially lower than those of the other tellers at the branch, including Kerri Maksen, who also worked 20 hours a week in the drive-through. In Wing's opinion, a teller's sales referrals were a gauge whether a teller engaged in the proactive behavior that it took to get a sale, and in turn, whether the teller would make a good SSA. Wing also had the impression from his observations of McCurty at the branch that she was not very proactive in assisting other tellers

when they needed help. After the interview, Wing told McCurty that he wanted to interview additional candidates, explaining that he wanted to avoid the mistake that had been made with Norton.

Wing contacted Garza, the recruiter, and asked him to post the SSA position externally. Garza posted the position on JPMC's external website on November 25, 2009 at 4:42 p.m. About an hour later, Garza clicked a tab on JPMC's recruiting software indicating that McCurty had been "rejected" for the position. Garza's entry included this notation: "unable to communicate at the level required for the role." Garza did not compose this notation but selected it from a drop-down menu of reasons for rejection. Although Garza cannot recall what Wing told him that led him to believe that McCurty had been rejected, Garza's practice is to select the "unable to communicate" note when a manager has indicated that an employee may not be ready for the position or has not met certain guidelines or requirements for the role. The administrative entry of the "rejected" notation in the recruiting software did not prevent Wing from continuing to consider McCurty for the position. Garza did not send a rejection letter to McCurty on November 25, 2008, as he had done when he had listed her as "rejected" for the August 2008 opening.

Wing asked Ron Fillon, the District Manager, to meet with McCurty about the SSA position. McCurty met briefly with Fillon on December 2, 2008. Fillon's intention in meeting McCurty was to make sure that she understood that the SSA position was a sales position and to answer any questions she had about the application process. Fillon believed at that time that no decision had been made with respect to McCurty's application. Like Wing, Fillon told McCurty that JPMC did not want to make a mistake by hiring the first person interviewed.

5

Wing interviewed two external candidates for the October 2008 opening: Paula Fakes, a white female and, and Chuck Richardson, a white male. Richardson had operated his own retail grocery business successfully for several years and had most recently been a department manager at a grocery store, where he ranked in the top five for sales in his district. Wing interviewed Richardson on December 12, 2008. Richardson was friendly and outgoing and interacted comfortably with people on his way in and out of the branch. Wing decided to hire Richardson shortly after interviewing him and Garza formally offered him the position. Richardson accepted the job on December 15, 2008.

## DISPUTED FACTS

The parties dispute whether Wing rejected McCurty for the SSA position on or before November 25, 2008. (As noted above, this is not the only disputed fact, but it is the only one that is material for purposes of deciding the instant motion.)

## OPINION

Summary judgment is proper where there is no showing of a genuine issue of material fact in the pleadings, depositions, answers to interrogatories, admissions and affidavits, and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "'A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.'" *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007) (quoting *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005)). In determining whether a genuine issue of material facts exists, the court must construe all facts in favor of the nonmoving party. *Squibb v. Memorial Medical Center*, 497 F.3d 775, 780

6

(7th Cir. 2007). Even so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer, such as JPMC, "to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish that she was discriminated against because of her race or sex (pregnancy), a plaintiff has two options: she can adduce direct proof of discriminatory intent, *see*, *e.g.*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985), or she can proceed indirectly under the burden-shifting method of proof first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009).

The EEOC, on behalf of McCurty, has proceeded under the indirect method. Under this burden-shifting approach, the EEOC initially must establish by a preponderance of the evidence a prima facie case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A valid prima facie case creates a presumption that discrimination has occurred by eliminating the most common nondiscriminatory reasons for the adverse employment action. *Id*. at 254. If the plaintiff carries its burden, then the burden shifts to defendant to rebut the presumption by coming forth with a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the defendant meets its burden of production, then the initial presumption of discrimination drops from the case and the burden shifts back to the plaintiff to show that the employer's proffered reason is a pretext, that is, "not the true reason" for the employment decision. *Id*. at 255.

In *McDonnell Douglas*, 411 U.S. at 802, the Court held that to make a prima facie showing of discrimination, the plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was rejected for the position; and (4) after rejecting the plaintiff, the defendant continued to consider other applicants. The court cautioned, however, that not all Title VII cases are the same and that differing factual situations might call for a different specification of the plaintiff's prima facie proof. *Id*. at n.13. As at least one court has noted, this lack of a "stock" prima facie test has given rise to different requirements in different contexts, along with a fair amount of confusion over which test applies in which circumstance. *Walker v. Mortham*, 158 F.3d 1177, 1185 (11th Cir. 1998).

This case is no exception. Relying on a line of failure-to-promote cases from the Seventh Circuit, including *Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005), *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003), and *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001), JPMC contends that the EEOC must show that: (1) McCurty is a member of a protected class; (2) she was qualified for the SSA position; (3) she was rejected for the position; and (4) the position was granted to a person outside the protected class who was not better qualified than McCurty. According to JPMC, the EEOC's case founders on the fourth element because it cannot show that McCurty was better qualified for the SSA position than Richardson.

The EEOC responds that the cases cited by JPMC are not on point because each involved a situation in which one employee "lost out" to another internal applicant vying head-to-head for the promotion. This case, says the EEOC, is different: JPMC's records show that McCurty was "rejected" for the SSA position on November 25, 2008, before any other candidates even were in the pipeline. Thus, argues the EEOC, this is not a comparative

8

qualifications case at all but rather a "failure to hire" case, governed by the traditional test set out in *McDonnell Douglas*, under which a plaintiff is *not* required at the prima facie stage to show that the person who ultimately got the job had similar or lesser qualifications.

JPMC points to other evidence to argue that when Garza made the computerized "rejected" notation on McCurty's recruitment file, he simply misunderstood what Wing had told him. JPMC points out that Wing, not Garza, was the decision-maker; Wing neither knew of nor was constrained by Garza's file notation; and Wing testified at his deposition that he continued to consider McCurty for the SSA position right up until the time he decided to hire Richardson. As corroboration of Wing's testimony, JPMC points to Wing's request that Fillon meet with McCurty about the position in early December, after Garza made his "rejected" entry; Fillon's understanding at the time of this meeting that no decision about McCurty's application had been made; and Garza's failure to email McCurty to confirm that she was rejected for the October 2008 opening, as he had when he had made the same "rejected" entry in McCurty's file with respect to the August 2008 opening. According to JPMC, all of this evidence combines to show clearly that Garza merely made a mistake when he indicated that McCurty had been rejected as of November 25, 2008.

JPMC's explanation is logical and it has corroboration in the record, which means that a fact finder might well determine that this is what actually happened. But this is not the only inference that can be reasonably drawn from the evidence. The evidence also reasonably allows the inference that Wing said something to Garza that led Garza to conclude that Wing had rejected McCurty for the October 2008 SSA opening. Wing may well be telling the truth when he says he did not make up his mind until he offered the job to Richardson, but Garza's notation

9

contradicts this assertion. Granting all reasonable inferences in the EEOC's favor, Garza's notation is sufficient to create a factual dispute concerning when Wing rejected McCurty.

JPMC does not dispute that McCurty is a member of a protected group and that she met at least the "minimal qualifications" of the SSA position. Accepting, solely for summary judgment purposes, that McCurty was rejected for the position and JPMC continued to seek applicants, and recognizing that the EEOC's burden of proof at the prima facie stage is "not onerous," *Burdine*, 450 U.S. at 255, I conclude that the EEOC has met its prima facie burden even without showing that McCurty's qualifications were better than Richardson's. *Accord EEOC v. Target*, 460 F.3d 946, 956-57 (7th Cir. 2006) (fourth element in failure-to-hire case requires plaintiff to show that "after the applicant's rejection, the position remained open and the employer continued to seek applications from persons of the rejected applicant's qualifications"); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1174 (7th Cir. 2002) (same); *Walker v. Mortham*, 158 F.3d 1177, 1191-92 (11th Cir. 1998) (prima facie case does not require plaintiff to establish that successful applicant was less than or equally qualified to hold position); *Lust v. Sealy, Inc.*, 243 F. Supp. 2d 908, 915-916 (W.D. Wis. 2002) (defendant's subjective reasons for taking adverse employment actions more appropriately considered in context of showing pretext than at prima facie stage). *See also Mason v. Continental Illinois National Bank*, 704 F.2d 361, 367 (7th Cir. 1983) ("Racial discrimination is frequently so difficult a phenomenon to prove or disprove that drifting from the settled landmarks, such as *McDonnell Douglas*, may be fraught with danger.") (Cudahy, J., concurring).

Having concluded that the EEOC has established a prima facie case of race and/or sex discrimination, I turn to JPMC's rebuttal evidence. As its legitimate, non-discriminatory reason

10

for not awarding McCurty the SSA position, JPMC asserts that Richardson was more qualified. In *Millbrook*, 280 F. 3d at 1180, the court held that "where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext 'unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.'" (quoting *Deines v. Texas Dept. of Protective and Regulatory Services*, 164 F.3d 277, 279 (5th Cir. 1999)). JPMC argues that because the EEOC has failed to adduce evidence calling into question the truth of Wing's belief that Richardson was the more qualified applicant, no trial is necessary.

In response, the EEOC does not attempt to show that McCurty was more qualified than Richardson. Instead, it repeats its contention that any comparison of McCurty to Richardson is a red herring because Richardson had not even applied at the time Wing decided that he was not going to hire McCurty.

JPMC replies that even assuming there was a gap between McCurty's rejection and Richardson's application, the EEOC still must establish McCurty's qualifications relative to Richardson's in order to establish pretext. JPMC relies on *Mason v. Continental Illinois National Bank*, 704 F.2d 361, 365 (7th Cir. 1983). In that case, the plaintiff applied within her bank division for a promotion for which she met the minimal qualifications. Her name and that of another candidate were forwarded to a supervisor, who in turn discussed the candidates with the division's manager and assistant manager. The manager told the assistant manager and supervisor that they should attempt to find out whether there were other candidates within the

11

division or elsewhere who should be considered for the position. A few days later, Maryann Yarmolchuk, an employee who had recently resigned from the division, called the supervisor and said that she regretted her resignation decision and wanted to come back. Yarmolchuk ended up getting the job for which plaintiff had applied. *Id*. at 362-63.

On appeal, the court rejected plaintiff's argument that she should have been promoted as soon as she became minimally qualified for the position, explaining:

> [W]hen the opening involves a managerial position for which there are several applicants, the employer will naturally be looking for the best qualified applicant rather than a minimally qualified one, and the fact that he turns down the first minimally qualified applicant who shows up, in the hope that a better qualified one will appear soon, does not create an inference of discrimination.

*Id*. at 365. The court upheld the entry of summary judgment for the employer, noting that there was extensive evidence, including Yarmolchuk's superior performance reviews, supporting the employer's determination that Yarmolchuk was the more qualified candidate. *Id*. at 366.

JPMC argues that like McCurty, Mason was "rejected" before the better applicant, Yarmolchuk, came along, yet the court of appeals still found that Yarmolchuk's superior qualifications defeated any inference of discrimination. However, it is not clear from *Mason* that the employer had decided before Yarmolchuk applied that it was not going to promote Mason, or whether it merely had deferred making a decision on Mason's application while it looked for other, better-qualified candidates. Notably, the court remarked that "[m]aybe if Yarmolchuk had not providentially reappeared, Mason would have been appointed after all," *id*., which suggests the latter, deferral scenario. In this case, by contrast, the EEOC has presented evidence allowing the inference that JPMC already had completely rejected McCurty before it began looking for other, better-qualified candidates.

Of course, the mere fact that an employer rejects an applicant without any other candidates in the pipeline does not, by itself, give rise to an inference of discrimination. *Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010) (fire chief's having offered positions to individuals who had never signed up to be interviewed did not establish pretext where chief testified that plaintiffs had traits or were in situations that made them unacceptable for the jobs). In this case, there is substantial evidence that regardless who else applied, Wing did not view McCurty as a good fit for the SSA position because of her low number of teller sales referrals and her lack of proactive behavior at the bank.

But JPMC has not claimed that it rejected McCurty solely because of her own mediocre qualifications. Rather, it asserts that it rejected McCurty because of how her qualifications stacked up against Richardson's. But if Garza's "rejected" notation is deemed accurate by a fact-finder, then this could not be true. This single piece of evidence isn't exactly overwhelming, but it is enough to defeat summary judgment on the issue of pretext. *Accord Eastland v. Tennessee Valley Authority*, 704 F.2d 613, 626 (11th Cir.1983) (district court erred in finding that relative qualifications were a sufficient legitimate, nondiscriminatory reason where there was no evidence that decision-maker knew of applicants' relative qualifications when he made adverse employment decision).

This might strike JPMC as a punctilious basis to deny summary judgment, but at the Rule 56 stage the court is not allowed to chose between the competing inferences reasonably drawn from the material facts, no matter what the relative weight of the evidence supporting them. In this case, we cannot determine whether JPMC's stated reason for its decision was bona fide until we can determine when that decision was made. Because of Garza's notation, that

determination will have to be made at trial. A jury will have to determine whether Wing is telling the truth when he says that he continued to consider McCurty for the open SSA position until he offered the job to Richardson instead. In any event, and as the EEOC is well aware, even if the EEOC were to establish pretext, it still has the burden to establish that JPMC intentionally discriminated against McCurty. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146 (2000). Showing that JPMC's explanation for rejecting McCurty is false would permit but would not require the jury to draw this inference. *Id*. at 148.

## ORDER

IT IS ORDERED:

1. The motion of defendant JPMorgan Chase Bank, N.A. for summary judgment (dkt. 52) is DENIED.

2. The motion of plaintiff Equal Employment Opportunity Commission for leave to file a surreply (dkt. 103) is DENIED as unnecessary.

Entered this 1st day of October, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge